# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 15-41166

United States Court of Appeals
Fifth Circuit

**FILED**
May 27, 2016

Lyle W. Cayce
Clerk

DAVID WILLS; JAMES SALMON,

Plaintiffs - Appellants

v.

ARIZON STRUCTURES WORLDWIDE, L.L.C.; JOHNSON-MARCRAFT,
INCORPORATED

Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Texas

Before KING, SOUTHWICK, and HAYNES, Circuit Judges.

HAYNES, Circuit Judge:

Petitioners David Wills and James Salmon appeal the district court's dismissal of their petition to compel arbitration under 9 U.S.C. § 4, arguing that the district court erred in holding that their petition was barred by collateral estoppel. Respondents Arizon Structures Worldwide, LLC ("Arizon") and Johnson-Marcraft, Inc. ("JMI") (collectively, the "Arizon Entities") contend that the district court properly concluded that the prior Missouri Circuit Court's judgment denying arbitration precluded the district court from considering the question of arbitrability in this case. Because we conclude that the district court incorrectly held that Wills and Salmon (collectively,

No. 15-41166

"Employees")[1] were in privity with the party to the Missouri Circuit Court's judgment, we REVERSE and REMAND.

## I. Background

Arizon designs, manufactures, and sells air structures. JMI is an affiliate of Arizon. Wills and Salmon are employees of Global Blue Technologies-Cameron, LLC ("GBT"), which raises, harvests, and sells shrimp using large man-made ponds that are covered by air structures supplied by Arizon. In April 2013, GBT entered into an agreement with Arizon and JMI (the "Agreement"), which provided, inter alia, that "any dispute relating to [the] Agreement or any other matter shall be fully and finally resolved by binding Arbitration under the Rules of the American Arbitration Association ("AAA")." A few weeks later, Arizon issued three Quotations offering to sell three air structures. The Quotations listed Wills, Salmon, and GBT and its affiliates[2] as the "buyers," and contained a combination forum-selection arbitration clause. Wills and Salmon initialed and signed the Quotations on April 29, 2013. A dispute between the parties later arose.

### A. Missouri State Court Proceedings

On December 11, 2014, Arizon filed suit in the Circuit Court of St. Louis County, Missouri (the "Missouri trial court"), alleging breach of contract against Wills, Salmon, and four GBT-related corporate entities. A few days later, before GBT had been served with the petition in the state court action,

---

[1] For clarity, we refer to Wills and Salmon collectively as "Employees," but we note that the exact relationship Wills and Salmon have with GBT is unclear. In their petition before the district court, Wills and Salmon allege that they are employees and agents of GBT. However, the answers Wills and Salmon filed in the Missouri trial court state that Wills is the chief executive officer of GBT and that Salmon is the president of Sustainable Seafood Products, Inc., a subsidiary of GBT.

[2] GBT has a number of other affiliates that are involved in the Missouri state court action—the exact relationship of these affiliates is not pertinent to this appeal.

No. 15-41166

GBT filed a demand for arbitration with the AAA against Arizon and JMI, as well as Ron Scharf, the chairman of Arizon and JMI, and Jan Ligas, Arizon's President.  Wills and Salmon were not parties to this proceeding.

Arizon filed an amended petition in the Missouri trial court on January 7, 2015, adding a count seeking a declaratory judgment that any claims between the parties must be litigated in the Missouri trial court and are not properly subject to arbitration.  Arizon also filed a motion to stay the arbitration proceeding initiated by GBT with the AAA.  JMI, Scharf, and Ligas filed a motion to intervene.

On January 21, 2015, counsel for Wills, Salmon, and GBT entered an appearance in the Missouri trial court.  Wills and Salmon filed a motion for extension of time to file a responsive pleading, stating that GBT would be filing a motion to compel arbitration no later than January 28, 2015, and that "if the Court determines that this matter should be heard in arbitration, the claims against the Individual Defendants would be disposed of without the need for further judicial involvement or for the Individual Defendants to respond to the Complaint."

GBT then filed its motion to compel arbitration, requesting that the Missouri trial court enter an order compelling Arizon to arbitrate its claims.  GBT also filed its opposition to Arizon's motion to stay arbitration.  On February 10, 2015, the Missouri trial court held a hearing and entered an order granting Arizon's motion to stay arbitration (the "February 10 Order").  On April 8, 2015, the Missouri trial court entered a "judgment" (the "April 8 Judgment") affirming the February 10 Order and expressly denying GBT's motion to compel arbitration.  GBT appealed the denial of its motion to compel arbitration, and the Missouri Court of Appeals stayed the trial court proceedings pending appeal as to the GBT defendants only.

3

No. 15-41166

On April 29, 2015, Wills and Salmon filed a motion to dismiss Arizon's claims against them for lack of personal jurisdiction, lack of subject matter jurisdiction, and failure to state a claim. The Missouri trial court denied the motion. On July 22, 2015, Wills and Salmon filed a motion to compel arbitration, which the Missouri trial court denied on August 19, 2015 (the "August 19 Judgment").

On October 6, 2015, the Missouri Court of Appeals affirmed the Missouri trial court's April 8 Judgment, concluding that "[b]ecause the subsequently executed contract's dispute resolution conflicted with and thereby superseded the earlier arbitration agreement, . . . the trial court did not err in denying [GBT's] motion to compel arbitration and granting [Arizon's] motion to stay arbitration." The Missouri Supreme Court denied review of the court of appeals's decision on December 7, 2015.

Wills and Salmon filed a petition for a writ of prohibition with the Missouri Court of Appeals on January 8, 2016, challenging the Missouri trial court's denial of their motion to dismiss for lack of personal jurisdiction. The Missouri Court of Appeals granted the petition, concluding that Wills and Salmon were not parties to the Quotations in their personal capacities and holding that the trial court lacked personal jurisdiction over them. The court of appeals directed the trial court to dismiss Wills and Salmon from the trial court proceeding for lack of personal jurisdiction.[3]

---

[3] The Arizon Entities contend that the Missouri Court of Appeals's conclusion that Wills and Salmon were not parties to the Quotations in their personal capacities moots this appeal, because it precludes the Arizon Entities from filing a breach of contract action against Wills and Salmon in Missouri or elsewhere. We need not opine on the potentially preclusive effect of the Missouri Court of Appeals's order concluding that the Missouri trial court lacked personal jurisdiction. Section 4 of the Federal Arbitration Act permits "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States district court" that would otherwise have jurisdiction over the underlying dispute "for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. The Supreme Court has

No. 15-41166

*B. Texas Federal Court Proceedings*

On April 29, 2015, Employees filed a petition to compel arbitration under 9 U.S.C. § 4 in the Southern District of Texas seeking to compel arbitration of any claims arising out of the Agreement. The Arizon Entities filed a motion to dismiss the petition, arguing that res judicata and/or collateral estoppel required dismissal of the petition. Employees then filed a motion for preliminary injunction and temporary restraining order.

On August 13, 2015, the district court conducted a hearing on the Arizon Entities' motion to dismiss and at the end, orally granted the motion to dismiss and concluded that it was unnecessary to address Employees' motions for a preliminary injunction and temporary restraining order. In its subsequent written order granting the motion to dismiss, the district court held that the Missouri trial court's April 8 Judgment was entitled to preclusive effect under the doctrine of res judicata because (1) Wills and Salmon were in privity with GBT with respect to their request to compel; and (2) the April 8 Judgment was final for purposes of res judicata.[4] This appeal followed.

---

recognized that Section 4 "enables a party to seek an order compelling arbitration even when the parties' controversy is not the subject of pending litigation." *Vaden v. Discover Bank*, 556 U.S. 49, 68 n.16 (2009); *see also id.* at 63 n.13 ("The parties' underlying dispute may or may not be the subject of pending litigation. This explains § 4's use of the conditional 'would' and the indefinite '*a* suit.'"); *cf. Cmty. State Bank v. Knox*, 523 F. App'x 925, 930 (4th Cir. 2013) (concluding that a Section 4 petition failed where "there [was] no existing *or potential* substantive conflict" between Section 4 petitioner and respondent, where respondent had not filed any claims against petitioner and had specifically disclaimed any future action against respondent (emphasis added)). Here, although the action against Wills and Salmon in the Missouri trial court may very well be dismissed pending the outcome of the Arizon Entities' petition for review, there is clearly an underlying dispute that Arizon has refused to arbitrate. Thus, the mere fact that the Missouri trial court must dismiss Arizon's claims against Wills and Salmon for lack of personal jurisdiction does not moot this appeal.

[4] Because the district court concluded that the April 8 Judgment was entitled to preclusive effect, the district court did not reach Arizon's arguments regarding abstention.

5

No. 15-41166

## II. Discussion

Whether collateral estoppel[5] applies is a question of law, which we review de novo. *Bradberry v. Jefferson Cty.*, 732 F.3d 540, 549 (5th Cir. 2013). "In determining the preclusive effect of an earlier state court judgment, federal courts apply the preclusion law of the state that rendered the judgment." *Weaver v. Tex. Capital Bank N.A.*, 660 F.3d 900, 906 (5th Cir. 2011). Here, because the underlying judgment is from the Missouri Circuit Court, Missouri preclusion rules apply. Under Missouri law, collateral estoppel "precludes relitigation of an issue previously decided and incorporated into an earlier judgment." *Sexton v. Jenkins & Assocs.*, 152 S.W.3d 270, 273 (Mo. 2004) (en banc). In determining whether collateral estoppel applies, Missouri courts consider four factors:

> (1) whether the issue decided in the prior adjudication was identical to the issue presented in the present action; (2) whether the prior adjudication resulted in a judgment on the merits; (3) whether the party against whom estoppel is asserted was a party or was in privity with a party to the prior adjudication; and (4) whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit.

---

[5] The district court's order dismissing the petition to compel arbitration refers to res judicata, rather than collateral estoppel. Although there is a modern tendency to conflate the two terms, they are distinct. *See White v. World Fin. of Meridian, Inc.*, 653 F.2d 147, 150 & n.5 (5th Cir. Unit A Aug. 1981). "[R]es judicata forecloses all that which might have been litigated previously, [whereas] collateral estoppel treats as final only those questions actually and necessarily decided in a prior suit." *In re Shuler*, 722 F.2d 1253, 1255 (5th Cir. 1984) (citation omitted). Because the motion to compel arbitration was but one issue in the Missouri trial court litigation, and because the Arizon Entities seek to preclude relitigation of only this issue that they contend was actually litigated, this case falls under the "collateral estoppel" definition. *See Johnson v. United States*, 576 F.2d 606, 611 (5th Cir. 1978) ("Collateral estoppel . . . precludes relitigation only of those issues actually litigated in the original action, whether or not the second suit is based on the same cause of action.").

6

*James v. Paul*, 49 S.W.3d 678, 682 (Mo. 2001) (en banc) (citing *Oates v. Safeco Ins. Co. of Am.*, 583 S.W.2d 713, 719 (Mo. 1979) (en banc)). Employees contend that the district court erred in concluding that (1) the Missouri trial court's judgment was a final judgment on the merits, and (2) Employees were in privity with their employer, GBT, such that the judgment denying arbitration precludes their Section 4 petition to arbitrate. Because we hold that the district court erred in concluding that Wills and Salmon were in privity with GBT, we need not reach the question of whether the April 8 Judgment was a final judgment for purposes of collateral estoppel.

Under Missouri law, "[p]arties are in privity for collateral estoppel purposes if the interests of the non-party are so closely related to the interests of the party, that the non-party can be fairly considered to have had his day in court." *Mo. Mexican Prods., Inc. v. Dunafon*, 873 S.W.2d 282, 286 (Mo. Ct. App. 1994). "[P]rivity is not established between two people merely because they both have an interest in proving or disproving the same set of facts." *Steinhoff v. Churchill Truck Lines, Inc.*, 875 S.W.2d 175, 177 (Mo. Ct. App. 1994).

The Arizon Entities contend that, while Employees were not a "party" to the Missouri trial court's April 8 Judgment denying GBT's motion to compel arbitration, they were in *privity* with GBT, because they share an identity of interests in connection with the arbitration issue such that they are bound by the judgment. Employees counter that the Missouri trial court's order against GBT does not bind them in their personal capacities, because they are not in privity with GBT in their personal capacities. In support of this contention, Employees argue that their interests diverge from GBT's, because they have an interest in avoiding being in *any* dispute with the Arizon Entities, whereas GBT is pursuing its own claims against the Arizon Entities, and because Employees had a defense to personal jurisdiction in Missouri that GBT did not have. Thus, Employees chose to pursue dismissal for lack of personal

7

No. 15-41166

jurisdiction before seeking to compel arbitration.  Finally, Employees point to the lack of Missouri case law finding privity between a corporation and its employees when the employees are named in their individual capacities.

The district court agreed with the Arizon Entities' position, noting that Employees did not oppose Arizon's motion to stay arbitration in the Missouri trial court, nor did they file their own motion to compel arbitration until much later.  The district court concluded that GBT and Employees shared an identity of interests with respect to compelling arbitration, holding that "[t]heir common interests arising from the same documents, their close corporate relationship, and their representation by the same legal counsel all support a finding that there is privity between them."  We disagree.

Analogous cases under Missouri law do not find privity based solely on an employment or corporate relationship.  For example, in *Missouri Mexican Products*, a Missouri appellate court considered whether the owner of a closely held corporation was in privity with the corporation.  873 S.W.2d at 286.  In concluding that the owner was in privity for preclusion purposes, the court distinguished an owner of a closely held corporation from an officer, director, stockholder, or member of a non-closely held corporation.  *Id.*  Citing the Restatement, the court noted that, except in specific circumstances, "a judgment in an action to which a corporation is a party has no preclusive effects on a person who is an officer, director, stockholder, or member of a non-stock corporation."  *Id.* (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 59 (1982)); *see also Thomas Berkeley Consulting Eng'r, Inc. v. Zerman*, 911 S.W.2d 692, 695 (Mo. Ct. App. 1995) (noting that "[o]rdinarily, a corporation is regarded as a wholly and separate legal entity, distinct from the members who compose it[,]" and concluding that privity did not exist for purposes of collateral estoppel where president of corporation was not clearly the alter ego of the corporation); *cf.* RESTATEMENT (SECOND) OF JUDGMENTS § 36(2) (1982) ("A party appearing

in an action in one capacity, individual or representative, is not thereby bound by or entitled to the benefits of the rules of res judicata in a subsequent action in which he appears in another capacity."). Missouri courts have also noted that the mere fact that both parties share the same attorney is not determinative in assessing privity. *See Steinhoff*, 875 S.W.2d at 177 (the fact that parties shared the same attorney and the attorney retained the same expert witness and took a single set of depositions for both cases did not support a finding that the parties were in privity).

A shared interest in compelling arbitration, by itself, does not warrant the conclusion that the parties are in privity such that the judgment denying GBT's motion to compel arbitration binds Employees. First, as Employees note in their brief, they did not join GBT's motion to compel arbitration because they believed the Missouri court lacked personal jurisdiction over them and feared that litigating the arbitrability of the dispute would be tantamount to consenting to the exercise of personal jurisdiction. Regardless of whether this belief was correct, it at least demonstrates a difference in interests between Employees and GBT at the time GBT filed its motion to compel.[6] Additionally, GBT's motion to compel relied, at least in part, on the fact that GBT had filed a demand for arbitration with the American Arbitration Association (AAA) before being served the pleadings in the state court litigation. Employees were not parties to GBT's demand for arbitration. Furthermore, although Employees represented to the Missouri trial court that, if the court granted GBT's motion to compel arbitration, the claims against Employees would be

---

[6] In fact, the Missouri Court of Appeals ultimately concluded that the Missouri trial court lacked personal jurisdiction over Wills and Salmon in their individual capacities: Wills and Salmon were thus never properly before the trial court. *See* RESTATEMENT (SECOND) OF JUDGMENTS § 34 (1982) ("A person who is named as a party to an action and *subjected to the jurisdiction of the court* is a party to the action." (emphasis added)).

disposed of, GBT's motion nowhere mentioned Arizon's claims against the Employees, nor is there any indication that had the court granted GBT's motion it would have also compelled arbitration of Arizon's claims against Employees. In fact, when the Missouri Court of Appeals stayed the trial court proceedings pending GBT's appeal of the April 8 Judgment, the proceedings were stayed as to the GBT defendants only, and not as to Wills and Salmon. In light of these distinct interests and Missouri courts' reluctance to find privity between non-closely held corporations and their employees, we conclude Wills and Salmon were not in privity with GBT for purposes of the April 8 Judgment. Thus, the April 8 Judgment is not entitled to preclusive effect. Accordingly, we reverse the district court's dismissal of Wills and Salmon's Section 4 petition on this ground.[7]

## III. Conclusion

For the foregoing reasons, we REVERSE the district court's judgment dismissing Wills and Salmon's Section 4 petition and REMAND for further proceedings consistent with this opinion.[8]

---

[7] The Arizon Entities also contend that even if the court concludes that Employees are not in privity with GBT such that the April 8 Judgment binds them, the privity issue is moot in light of the Missouri trial court's August 19, 2015, Judgment denying Employees' motion to compel arbitration in the state court. The Arizon Entities argue that the parties are identical in connection with that judgment, and thus the third element of collateral estoppel—whether the party against whom preclusion is asserted was a party or in privity with the party to the prior adjudication—is indisputably met. After briefing was completed in this case, the Missouri Court of Appeals held that the Missouri trial court lacked personal jurisdiction over Wills and Salmon in their individual capacities. Accordingly, the Missouri trial court's August 19 Judgment is void and is not entitled to preclusive effect. *See Berry v. Chitwood*, 362 S.W.2d 515, 517 (Mo. 1962) ("[A] void judgment may not be used as the basis for the application of [res judicata]."); *Century Fin. Serv. Grp., Ltd. v. First Bank*, 996 S.W.2d 92, 93 (Mo. Ct. App. 1999) ("A judgment entered against a defendant by a court lacking personal jurisdiction over the defendant is void.").

[8] Because we conclude that the district court improperly dismissed Employees' suit on preclusion grounds, we do not address Employees' argument that the district court erred by, in essence, abstaining from exercising its jurisdiction without conducting a *Colorado River* abstention analysis. *See Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800

---

(1976).  We therefore do not opine on the applicability of the *Colorado River* abstention doctrine to the instant case.  *See Am. Bank & Tr. Co. of Opelousas v. Dent*, 982 F.2d 917, 922 (5th Cir. 1993) ("We conclude . . . that the better course is to remand to the district court to enable it to consider the abstention questions in the first instance.").